By the Court, Cowen, J.
Simon Schoonmaker having died before the revised statutes took effect, (1 R. S. 725, § 28,) the *166 question is, whether the devise to his son Benjamin be within or without the rule in Shelley’s case, (1 Rep. 93.) The devise is of a freehold (life estate) to Benjamin, and, after the expiration of the freehold, directly and immediately to his heirs, adding, and to their heirs forever. By looking at the words in Shelley’s case which were, to E. S.for life, and then to the heirs males of his body, and to the heirs males of the body of such heirs males, we shall see that there was a stronger case than the present for making the words intended to carry a remainder, terms of purchase.- and yet they were held to be terms of limitation. The case of Brant, ex dem. the heirs of Provoost, v. Geston, (2 John. Cas. 384,) presents a still stronger tendency of words, than those in Shelley’s case, to show the grantor’s intent that the passing of the estate to the heirs of the body of the life tenant should make them purchasers ; but this court held it within the rule. That the added words, to their heirs forever—i. e. to the heirs of the heirs forever—shall not be received to vary the import, was held in both the cases cited. Such superadded words are considered as mere surplusage. (1 Prest, on Estates, 351, 2.)
But it is said the cases cited related to conveyances by deed, not by devise; and that, in the latter, the intent is to be more regarded. It is enough perhaps to answer that the researches of the learned counsel for the plaintiff, which have been very great, have furnished us with no case on this word heirs, when taken by itself, which makes a distinction in respect to the use of it between the two modes of conveyance. On the contrary, he admits that Jones v. Morgan, (1 Br. Ch. Cas. 205, 216, 219,) is a direct authority against the distinction. That was a case decided by Lord Thurlow, upon full argument, and evidently after much consideration by himself. It was on the word heirs used in a devise. He-said : u I take the rule in Shelley’s case never to have been shaken at all. I take that rule to be that, where the heir takes in the character of heir, he must take in the quality of heir. I never heard it contended that the téstátof could vary the sense of the law: whether heirs *167 general, heirs male or heirs female are to take by those words they must take in that quality. I take the question always to have been as to the import of the word heir in the proposed case.” Again : (id. p. 219 :) “ By all the cases, where the estate is so given that, after the limitation to the first taker, it is to go to every person who can claim as heir to the first taker, the word heirs must be a word of • limitation. All heirs taking as heirs must take by descent.” Again : “ I think the argument immaterial that he meant the first estate to be an estate for life. I take it that in all cases the testator does mean so. I rest it on what he meant after-wards. If he meant that every person who should be heir should take, he then meant what the law would not suffer him to give or the heir to take as a purchaser.” In short, the rule of Shelley’s case is here applied in its utmost rigor to a devise. “ The ancestor during his life,” says Lord Coke, “ beareth in his body, (in judgment of law,) all his heirs. Hares est pars antecessoris. Hence if land be given to a man and his heirs, all his heirs are so totally in him, that he may give the lands to whom he will.” (Co. Lift. 22, b.) The latest and ablest writers on estates show how entirely the doctrine of Lord Thurlow has been sustained, against the strongest qualifying words. Mr. Preston in his book on estates, treating of the rule in Shelley’s case as it had been applied to wills, and citing the cases, says : “ Neither the express declaration that the ancestor shall- have the estate for life and no longer, nor that he shall have only an estate for life in the premises, and that after his decease it shall go to his heirs of his body, and in default of such heirs vest in the person next in remainder, and that the ancestor shall have no power to defeat the intention of the testator; nor, that the ancestor shall be tenant for his life and no longer, and that it shall not be in his power to sell, dispose or make away with any part of the premises; nor a provision that the ancestor shall not be impeached for waste, nor that he shall have a power of leasing or jointuring, nor the interposition of an estate to trustees to support contingent *168 remainders, nor a direction that the heirs shall take severally and successively as they shall be in priority of birth, every elder and the heirs male of his body to be preferred to every younger, will change the word heirs into words of purchase. (1 Prest, on Estates, 365, 6.) The last is nearly the case of Jones v. Morgan. Chancellor Kent says, the rule in Shelley’s case is equally applicable to conveyances of the legal estate, whether by deed or will; though on the latter there is a greater latitude of construction in furtherance of the testator’s intention. (4 Kent’s Com. 216, 4th ed.) We have seen, however, by the illustrations of Preston, the limits by which that latitude is bounded, and how much more than can be found in the case before us is required to protect the plaintiff as a purchaser under his grandfather’s will.
Judgment for the defendant.